IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00239-M

GAEGE ROOT,                              )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )          **OPINION**
                                         )          **AND ORDER**
TONY ROBINSON, TONY THE CLOSER           )
LLC, and I CLOSE DEALS LLC,              )
                                         )
                    Defendants.          )

This matter comes before the court on Defendants Tony Robinson, Tony the Closer LLC ("TTC"),

and I Close Deals LLC's ("ICD") motion to dismiss Plaintiff Gaege Root's complaint or, in the alternative,

to compel arbitration, filed August 13, 2020. [DE-13]

For the reasons that follow: (1) Defendants' motion to compel arbitration is SET FOR HEARING;

and (2) Defendants' motion to dismiss is HELD IN ABEYANCE pending the outcome of that hearing.

I.     **Background**

Plaintiff's complaint alleges as follows: Robinson organizes conferences to teach others how to be

successful in the real-estate business. [DE-1 ¶¶ 8–10]  In late 2019, ICD—of which Robinson is the sole

member—organized and sponsored such a conference in Las Vegas, Nevada called the "100K Club

Conference 2019" (the "Conference").  [DE-1 ¶¶ 5, 10; DE-1-2]  To promote the Conference, ICD

announced a sweepstakes in which paying Conference attendees would be entered into a drawing to win

$100,000 cash (the "Sweepstakes"). [DE-1 ¶¶ 12; DE-1-2] ICD advertised the Sweepstakes with an "FAQ"

(or frequently-asked-questions section) regarding the Conference reading in part as follows:

1

How Can I Win $100,000?

Buy a ticket of any level and attend live or online through our pay-per-view option. Is there a catch? No, one lucky person will walk away with $100,000. In order to win you must purchase a ticket in person or pay-per-view. Winner will be drawn randomly from ticket buyers. That is it!

[DE-1-2] The ICD advertisement also contained a "$100k Drawing Disclaimer" that said that "[o]nly one lucky person (in person or pay-per-view) will walk away with $100,000. In order to win you must purchase a ticket in person or pay-per-view. Winner will be drawn randomly from ticket buyers, complimentary tickets do not apply." [DE-1-2]

Plaintiff purchased a ticket to attend the Conference, although precisely when, where, and how the ticket was purchased is not alleged. [DE-1 ¶ 13] Plaintiff also attended the Conference in person in reliance upon ICD's advertisement regarding the Sweepstakes. [DE-1 ¶ 13] At the Conference, Plaintiff was selected as the Sweepstakes winner, and Robinson personally presented Plaintiff with an outsized replica of a check for $100,000. [DE-1 ¶ 15; DE-1-1]

But Plaintiff did not actually "walk away with $100,000" from the Conference as advertised. [DE-1-2] Instead, Plaintiff was told that he would be sent an "Affidavit of Eligibility and Release" form (the "Affidavit") that he would be required to execute, have notarized, and return to ICD within five days. [DE-1 ¶ 18] Plaintiff received the Affidavit, executed it, had it notarized, and timely returned it to ICD. [DE-1 ¶ 18] The Affidavit contains, *inter alia*: (1) blanks which Plaintiff filled in with various personal information; (2) Plaintiff's agreement to representations that he had entered the Sweepstakes and was the "potential winner" thereof, that the Affidavit was being submitted "to assist in determining whether [Plaintiff was] eligible to receive the Prize in accordance with the Official Rules of the Promotion" (the "Official Rules"), that he had "fully complied with the Official Rules[,]" and that he understood that the prize would be paid out according to a specified payment schedule; (3) Plaintiff's consent to use his

2

likeness; and (4) a release of any claims Plaintiff might have against ICD and its affiliates in connection with the Sweepstakes. [DE-1-3]

Plaintiff thereafter received $30,000 from TTC—of which Robinson is the sole member—but has not received the balance of his prize. [DE-1 ¶ 21] Plaintiff reached out to Robinson, who told Plaintiff he would not be paying the outstanding $70,000. [DE-1 ¶ 22]

Plaintiff filed his complaint in this court on June 4, 2020, bringing claims against Defendants under the following theories of liability: (1) breach of contract; (2) "fraud, material misrepresentation and omission"; (3) punitive damages; (4) unfair and deceptive trade practices; and (5) constructive trust.[1] [DE-1]

On August 13, 2020, Defendants jointly moved: (1) to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted; or (2) in the alternative, for an order compelling arbitration pursuant to the Federal Arbitration Act or the North Carolina Revised Uniform Arbitration Act. [DE-13; DE-14 at 8–9] In support of their motion, Defendants filed an affidavit in which Robinson attests that: (1) the Official Rules "governed" the Sweepstakes; and (2) the Official Rules were "available to all visitors of" websites www.100kclubconference.com and www.itsourturn.com prior to the Conference. [DE-13-1] In response, Plaintiff proffered his own affidavit attesting that: (1) he never saw the Official Rules prior to reviewing Robinson's affidavit; (2) he was told that the Affidavit he was sent was a "simple form which was required for tax purpose[s]"; and (3) he never agreed to arbitrate or release any claims against Defendants. [DE-16-1]

---

[1] Plaintiff's punitive-damages and unfair-and-deceptive-trade-practices claims push Plaintiff's claims past 28 U.S.C. § 1332's $75,000 amount-in-controversy threshold. *See R. L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc.*, 23 F. App'x 141, 145 n.3 (4th Cir. 2001).

3

Defendants' motion has been fully briefed and is ripe for adjudication.

## II.    Analysis

In essence, Defendants' arguments are that: (1) the court must dismiss the suit pursuant to Rule 12(b)(6) because the releases within the Affidavit and Official Rules preclude Plaintiff's lawsuit; and (2) even if the releases do not require dismissal, the court must compel arbitration pursuant to the arbitration clause within the Official Rules (which are referenced within the Affidavit). Defendants make no arguments regarding the substantive adequacy of the claims themselves under Rule 12(b)(6), but instead exclusively argue that the Affidavit and Official Rules preclude this litigation. [DE-14]

A threshold question is therefore whether Defendants have established that the Affidavit or Official Rules govern the parties' relationship[2] such that the releases or arbitration clause can provide support for Defendants' motion to dismiss or compel arbitration. *M.S. Willman v. AG of the United States*, 972 F.3d 819, 822 (6th Cir. 2020) ("A Rule 12(b)(6) movant has the burden to show that the plaintiff failed to state a claim for relief." (internal quotation marks and citations omitted)); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (burden on party moving to compel arbitration to demonstrate agreement to arbitrate). Because a conclusion that Defendants have established that the parties agreed to arbitrate their dispute would render superfluous any analysis of the claims under Rule 12(b)(6), the court first addresses whether the parties agreed to arbitrate.

---

[2] Plaintiff has alleged that all three Defendants played a role in organizing and facilitating the Sweepstakes [*see* DE-1 ¶¶ 10, 21], and Defendants have not argued that any one of them cannot be liable to Plaintiff as a matter of law. Because they have not, the court will treat Defendants as a single entity for purposes of this opinion, leaving open the possibility that Defendants may subsequently establish that one or all of them are not liable to Plaintiff.

4

*a. Defendants' motion to compel arbitration*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, embodies the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and allows parties to agree to arbitrate as an effective and cost-efficient means to resolve disputes. The FAA requires a district court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration" once a party to the arbitration agreement moves the court for a stay. 9 U.S.C. § 3.

But it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (FAA "places arbitration agreements on equal footing with all other contracts"). Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The burden lies on the movant to demonstrate, *inter alia*, "a written agreement that includes an arbitration provision which purports to cover the dispute[.]" *Adkins*, 303 F.3d at 500–01 (quotation marks and citation omitted). In reviewing a motion to compel arbitration, a district court may consider materials outside the pleadings, including the purported written agreement to arbitrate itself, to determine whether the parties agreed to arbitrate. *See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). "If a party's motion under [9 U.S.C.] §§ 3 or 4 presents unresolved questions of material fact, the FAA 'call[s] for an expeditious and summary hearing' to resolve those questions." *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 713 (4th Cir. 2015) (quoting *Moses H. Cone*, 460 U.S. at 22)).

Federal courts apply ordinary state-law principles governing the formation of contracts in reviewing motions to compel arbitration. *See Berkeley*, 944 F.3d at 236. Both parties take the position that North

5

Carolina's law of contract applies in this case. [DE-14 at 7, 10; DE-16 at 5, 14] Because they have done

so, the court will apply North Carolina law. *See id.* (applying state law agreed upon by parties in analyzing

arbitration issue).

Under North Carolina law, "advertising a promotional contest to the public is in the nature of an

offer. An enforceable contract is formed when a party accepts that offer and consideration is provided by

entering the contest and complying with all of the terms of the offer." *Jones v. Capitol Broad. Co.*, 128

N.C. App. 271, 274, 495 S.E.2d 172, 174 (1998).

As described above, ICD advertised that Sweepstakes participants were required to (1) buy a ticket

and (2) attend the Conference:

> How Can I Win $100,000?
>
> Buy a ticket of any level and attend live or online through our pay-per-view option.
> Is there a catch? No, one lucky person will walk away with $100,000. In order to
> win you must purchase a ticket in person or pay-per-view. Winner will be drawn
> randomly from ticket buyers. That is it!

[DE-1-2] Plaintiff alleges within his complaint that he bought a ticket and physically attended the

Conference in person. [DE-1 ¶¶ 13–14] Accordingly, if there were no other terms, Plaintiff has alleged

that he complied with the terms of ICD's offer and entered into the Sweepstakes, which would have created

an enforceable contract between the parties at that time under North Carolina law entitling Plaintiff to

participate in the Sweepstakes drawing. *Jones*, 128 N.C. App. at 274, 495 S.E.2d at 174. Further, Plaintiff

alleges that he won the Sweepstakes drawing, as evinced by the photograph of Robinson presenting Plaintiff

with the outsized replica check for $100,000, the authenticity of which Defendants have not challenged.

[DE-1 ¶ 15; DE-1-3] Thus, again assuming that there were no other terms, Plaintiff would have become

entitled to "walk away with" the prize money per the terms of ICD's advertisement-cum-offer once his

name was drawn. [DE-1-2]

6

Defendants' position, however, is that Plaintiff agreed to terms beyond those listed in ICD's advertisement. Although they do not dispute that Plaintiff won the Sweepstakes drawing, the court understands Defendants to take the position that: (1) executing the Affidavit was "a condition of receiving" the $100,000 prize; and (2) the Official Rules set forth additional terms for entering the Sweepstakes. [DE-14 at 10]

The court notes that, as a matter of basic contract law, any purported contractual terms governing the Sweepstakes must have been agreed to by Plaintiff *before* he won the Sweepstakes drawing. *See NRC Golf Course, LLC v. JMR Golf, LLC*, 222 N.C. App. 492, 503–04, 731 S.E.2d 474, 481 (2012) (applying North Carolina's pre-existing duty rule). Therefore, since the Affidavit was executed *after* Plaintiff's name was drawn, any purported contractual terms set forth within the Affidavit could not be enforced against Plaintiff absent additional consideration provided by Defendants to Plaintiff in exchange. *See id.* The court rejects Defendants' argument that the purported payment schedule set forth within the Affidavit provided additional consideration to Plaintiff, since the ICD advertisement described when, where, and how payment would be made by stating that the winner would "walk away with" the prize money from the Conference. [DE-1-2] Because Defendants make no other arguments regarding post-Sweepstakes consideration provided to Plaintiff, the court concludes that Defendants have failed to raise a genuine dispute as to whether the Affidavit can be enforced against Plaintiff at this time.[3]

That leaves the Official Rules. In his affidavit in support of Defendants' motion, Robinson attests that: (1) the Official Rules "governed" the Sweepstakes; and (2) the Official Rules were "available to all

---

[3] The court recognizes that the Official Rules contemplate that the Sweepstakes winner "will be required to complete and return to Sponsor an identity verification questionnaire and a liability and publicity release within three (3) days, or the Prize, as applicable, will be forfeited" [DE-13-1], which is reasonably read as a term contemplating a requirement that Plaintiff complete and return the Affidavit. But having to complete and return a questionnaire and having to abide by purported contractual terms contemplated within the questionnaire are two different things.

7

visitors of" websites www.100kclubconference.com and www.itsourturn.com before the Conference took place. [DE-13-1] Thus, in contrast to the Affidavit, the Official Rules are alleged by Defendants to be terms to which Plaintiff agreed *before* the Sweepstakes drawing.

In addition to the above attestations, Defendants have provided two documents purporting to be two versions of the Official Rules applicable at different times leading up to the Conference. [DE-13-1] These documents both appear to concern the Sweepstakes, and both contain arbitration clauses that appear to cover the instant dispute. [DE-13-1] Plaintiff, in his opposition affidavit, attests that: (1) he never saw the Official Rules prior to reviewing Robinson's affidavit; and (2) he never agreed to arbitrate or release any claims against Defendants. [DE-16-1]

As mentioned above, when faced with material uncertainty regarding whether parties agreed to arbitrate, district courts must conduct a summary hearing to resolve the question. *Dillon*, 787 F.3d at 713. Defendants have not provided any evidence that Plaintiff: (1) visited the websites upon which the Official Rules were allegedly made available; or (2) was aware of, saw, or affirmatively agreed to the Official Rules on the sites or elsewhere. Nevertheless, and in spite of the fact that Plaintiff has attested that he never saw the Official Rules before this litigation began, Plaintiff has not specifically alleged or provided any evidence regarding when, where, and how he bought the ticket to the Conference, and the ICD advertisement attached to Plaintiff's complaint and upon which Plaintiff relies appears to be a printout of an unspecified website where participants could purchase tickets to the Conference. [*see* DE-1-2 ("click below to see all the options available")]

The court is therefore left to speculate regarding: (1) whether Plaintiff purchased the ticket on one of the websites upon which Defendant alleges the Official Rules were made available; (2) if Plaintiff used one of those sites, how the Official Rules were made available on the site; and (3) whether Plaintiff was required to agree to the Official Rules before purchasing his ticket, e.g., by using a radio button indicating

8

that Plaintiff agreed to be bound by them. The court notes that North Carolina courts have upheld similar agreements as binding in other cases concerning online transactions. *See, e.g., Hill v. StubHub, Inc.*, 219 N.C. App. 227, 248, 727 S.E.2d 550, 564 (2012).

Because it is left with a gap in the story of how the parties came to contract that could be dispositive of Defendants' motion to compel, the court concludes that there exists a genuine issue of material fact regarding whether the parties agreed to arbitrate, and that a summary hearing is accordingly required under 9 U.S.C. § 3 and *Dillon*.

### b. *Defendants' motion to dismiss*

Because analysis of Defendants' Rule 12(b)(6) motion would be obviated by a ruling that Plaintiff agreed to arbitrate, the court will not undertake analysis of the motion to dismiss, if at all, until after the hearing on Defendants' motion to compel.

9

## III.  Conclusion

For the above-described reasons: (1) Defendants' motion to compel arbitration is SET FOR HEARING; and (2) Defendants' motion to dismiss is HELD IN ABEYANCE pending the outcome of that hearing.  Until Defendants' motion to compel is resolved, the adjudication of Plaintiff's claims is STAYED.

The parties are DIRECTED to undertake limited discovery regarding: (1) when, where, and how Plaintiff purchased his ticket; and (2) whether Plaintiff was aware of, saw, or agreed to the Official Rules before the Conference took place, which discovery is referred to Magistrate Judge Numbers for administration.  Following discovery, the parties are DIRECTED to file a status report on the docket indicating whether either party requests a jury trial on the motion to compel, or whether a bench trial (including by Judge Numbers) is desired.  The hearing on the motion to compel will be scheduled as soon thereafter as the court's schedule permits.

SO ORDERED this the ___12ᵗʰ___ day of __January__, 2020.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

10